# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| **BERTHA BATEY,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Case No. 3:09-1061 |
| ) | Judge Trauger |
| **AMERIGROUP TENNESSEE, INC.,** ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM AND ORDER

On January 31, 2011, the Magistrate Judge entered a Report and Recommendation (Docket No. 115) regarding the defendant's Motion for Summary Judgment (Docket No. 89), recommending that the motion be granted and this action be dismissed. Pending before the court are the plaintiff's Objections to the Report and Recommendation (Docket Nos. 123, 129). For the reasons discussed herein, the court will overrule the plaintiff's Objections and will adopt the Magistrate Judge's Report and Recommendation.

## BACKGROUND

In this action, *pro se* plaintiff Bertha Batey alleges that the defendant, Amerigroup Tennessee, Inc. ("Amerigroup"), fired her in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*[1] (*See* Docket No. 1.) At least some basic facts of the case

---

[1] The Report and Recommendation states that she has asserted a claim under the Age Discrimination in Employment Act ("ADEA") (Docket No. 115 at 2), but the plaintiff's Complaint does not mention that statute (*see* Docket No. 1). Nevertheless, the plaintiff does appear to allege that the defendant treated younger employees preferentially, so the court will construe her Complaint as asserting an ADEA claim.

appear to be undisputed.[2]

Amerigroup is a health management organization, and it hired the plaintiff as a Utilization Manager Registered Nurse in February 2007. The job involved "evaluat[ing] the necessity, appropriateness and efficiency of the use of medical services[,] procedures[,] and facilities" (Docket No. 111, Ex. 1), and the plaintiff's tasks included dealing with external healthcare providers on the telephone.

The plaintiff's employment was conditioned on the successful completion of a 90-day initial employment period. On June 26, 2007, the plaintiff's 90-day evaluation indicated that she had successfully passed the introductory period with an overall performance rating of 2.5 out of 4.0. (Docket No. 89, Ex. 1 at 54.) In the "Communication" section, the evaluation stated that the plaintiff "on occasion has been stern with providers." (*Id.*)

The indication that the plaintiff had successfully completed the introductory period was in error, however, because employees were required to score a performance rating of 3.0. On July 13, 2007, the plaintiff's supervisor created an addendum to the 90-day evaluation, stating that the plaintiff had actually failed the introductory period. (*Id.* at 56-58.) Among other performance issues, the addendum noted that the supervisor had received reports of the plaintiff's "verbal outbursts" from co-workers and that "external providers [had complained] regarding [her] tone and demeanor." (*Id.* at 56.) The addendum also noted certain "negative"

---

[2] The defendant filed a Statement of Undisputed Facts (Docket No. 91), to which the plaintiff did not file a formal response. The plaintiff's various filings deny certain of the defendant's factual assertions, however.

and "disrespectful" comments made by the plaintiff.[3] (*Id.*) The addendum granted the plaintiff a 30-day extension of her introductory period to correct her "[o]utburst[s] and negativity." (*Id.* at 58.) It stated that her failure to do so would result in her termination.

On November 27, 2007, the plaintiff was re-evaluated and was found to have successfully passed the 90-day introductory period.[4] The evaluation form directed the plaintiff to "[c]ontinue to maintain calm and professional demeanor with phone conversations." (*Id.* at 62.) A contemporaneous addendum noted that the plaintiff had apologized for an "[e]pisode of being argumentative with another manager." (*Id.* at 64.) Otherwise, however, the addendum stated that the plaintiff's habit of having outbursts was "improving." (*Id.*) A year-end performance appraisal, dated January 25, 2008, gave the plaintiff a 3.3 overall rating and directed her to "[c]ontinue to be aware of voice intonation when speaking with providers." (*Id.* at 50.)

On April 29, 2008, the plaintiff approached a co-worker, Patricia Courts, and, upset by how Courts was performing a certain task, asked her, "What the hell are you doing?" Later that day, Courts emailed the plaintiff, stating that the plaintiff's communication "is sometimes offensive" and that her tone was "unnecessary and hostile." (*Id.* at 61.) The plaintiff apologized

---

[3] The plaintiff has submitted a two-page document that appears to be her supervisor's notes from a July 5, 2007 meeting between the supervisor and the plaintiff. (Docket No. 111, Ex. 1 at 16-17.) These notes corroborate the addendum, because they stated that the plaintiff had engaged in "[v]erbal outbursts with staff and with callers/company representatives." (*Id.*) The notes stated that this was "[d]isruptive to our team environment and [would] NOT be tolerated." (*Id.*)

[4] It is unclear why this evaluation came several months after the scheduled end of the introductory period, which had been extended through August 2007.

to Courts, but, on May 5, 2008, the plaintiff received a written final warning regarding the incident. (*Id.* at 59.) The warning noted:

> There have been several discussions with Bertha when complaints from providers have been received in which the providers complained of sharp tone, abruptness, poor customer service. One provider had even requested to be assigned to another nurse because of Bertha's interactions. Another provider said "I would be disappointed to know that my staff was representing my company like that."

(*Id.* at 59.) The warning stated that, without immediate improvement in her behavior, the plaintiff would be terminated.

Finally, on September 2, 2008, the plaintiff attended a joint meeting of the Utilization Management and Case Management Departments. During the meeting, a manager, Lolita Bryant, fielded a question from a nurse. The plaintiff aggressively interrupted her answer, stating something to the effect of, "Lolita, that is not what she asked you." (*Id.* at 42; Docket No. 93 ¶ 7.) Bryant then looked toward the director of the plaintiff's department, to which the plaintiff responded, "Lolita, don't go there! You know that's not necessary! We're not going there!" (Docket No. 93 ¶ 7.) The plaintiff received a written notice of termination that same day, which stated that her "rude, inappropriate, and disrespectful" behavior had violated the corrective action plan set forth in the May 5, 2008 written warning. (Docket No. 89, Ex. 1 at 40.)

On September 8, 2008, the plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging race, sex, and age discrimination. The EEOC determined that it was unable to conclude that the defendant had committed a

violation. (*Id.* at 72.) The plaintiff then filed this *pro se* action on July 23, 2009.

The defendant has filed a Motion for Summary Judgment, pursuant to Federal Rule of Civil Procedure 56, which the court referred to the Magistrate Judge. In his Report and Recommendation, the Magistrate Judge first concluded that the plaintiff had failed to show a *prima facie* case of race or gender discrimination, because she had not shown that the defendant had given preferential treatment to someone outside of her protected class. (Docket No. 115 at 8.) Alternatively, the Magistrate Judge found that the plaintiff had not shown that the defendant's proffered reason for firing her was pretextual. (*Id.* at 8-9.) Next, for similar reasons, the Magistrate Judge found that the plaintiff had failed to show a *prima facie* case of age discrimination. (*Id.* at 9.) Finally, the Magistrate Judge found that the plaintiff's retaliation claim failed, because she offered no evidence that she had engaged in any protected activity before her termination. (*Id.*) The Magistrate Judge thus recommended that this court grant the defendant's motion and dismiss the plaintiff's claims. (*Id.* at 10.)

The plaintiff has now filed Objections to the Magistrate Judge's Report and Recommendation, pursuant to Federal Rule of Civil Procedure 72, which she has styled as a "Response" and an "Amended Response." (Docket Nos. 123, 129.)

## ANALYSIS

Rule 72 permits a party to "file specific written objections" to a magistrate judge's report and recommendation on a dispositive motion. Fed. R. Civ. P. 72(b)(2). The district court must "determine de novo any part of the magistrate judge's disposition that has been properly objected to." *Id.* 72(b)(3); *see also* 28 U.S.C. § 636(b)(1)(C).

As an initial matter, the court notes that the plaintiff has failed to file *specific* objections to the Report and Recommendation. "Failure to identify specific concerns with a magistrate judge's report results in treatment of a party's objections as a general objection to the entire magistrate judge's report. A general objection is considered the equivalent of failing to object entirely." *McCready v. Kamminga*, 113 Fed. Appx. 47, 49 (6th Cir. 2004) (citing *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991)).

The plaintiff has filed two documents, neither of which makes any objection to a specific section or finding of the Report and Recommendation. The plaintiff's first document, which is 52 pages long, is rambling and difficult to follow; pages appear out of order, and many pages have no connection to the pages that immediately precede or follow. (*See* Docket No. 123.) The majority of the filing consists of the plaintiff's narrative responses to the defendant's Statement of Undisputed Facts. Aside from briefly stating at the beginning that the plaintiff objects to the Magistrate Judge's decision to grant the defendant's motion (*id.* at 1), the document does not mention the Report and Recommendation. The plaintiff's second document is an additional response to the defendant's Statement of Undisputed Facts, and it does not mention the Report and Recommendation at all. (*See* Docket No. 129.)

The court recognizes that filings by *pro se* plaintiffs are generally construed leniently. Nevertheless, "even a *pro se* party's objections to a Report and Recommendation must be specific and clearly aimed at particular findings in the magistrate's proposal, such that no party be allowed a second bite at the apple by simply relitigating a prior argument." *Dipilato v. 7-Eleven, Inc.*, 662 F. Supp. 2d 333, 340 (S.D.N.Y. 2009). Here, the plaintiff's largely

6

incoherent filings do not object to any particular portion of the Report and Recommendation. Instead, she broadly attempts to "dispute[] all of Defendant's fabrications [of] 'undisputed material facts.'" (Docket No. 123 at 1.) It thus appears that the plaintiff wishes to entirely relitigate the defendant's motion, which is not allowed. *See Hous. Works, Inc. v. Turner*, 362 F. Supp. 2d 434, 438 (S.D.N.Y. 2005) ("[L]itigants cannot be permitted to use litigation before a magistrate judge as something akin to spring training exhibition game, holding back evidence for use once the regular season begins before the district judge."). This alone justifies an overruling of the plaintiff's objections.

More important, however, is the fact that the plaintiff has failed, at all stages of briefing, to submit admissible evidence in support of her allegations. Rule 56 requires parties to support their factual assertions with admissible evidence. Fed. R. Civ. P. 56(c), (e); *Viergutz v. Lucent Techs., Inc.*, 375 Fed. Appx. 482, 485 (6th Cir. 2010). In *Viergutz*, the Sixth Circuit noted that, when opposing summary judgment, parties must support their opposition with admissible evidence, rather than relying on allegations or denials in unsworn filings. 375 Fed. Appx. at 485. The court explicitly held that a party's "status as a pro se litigant does not alter [this] duty on a summary judgment motion."[5] *Id.* (dismissing *pro se* claims for lack of admissible supporting

---

[5] Furthermore, the Sixth Circuit has held that non-prisoner *pro se* litigants are not entitled to notice that, at summary judgment, they must file affidavits in support of their factual assertions. *United States v. Ninety-Three Firearms*, 330 F.3d 414, 428 (6th Cir. 2003). "Parties choosing to have counsel must bear the risk of their attorney's mistakes, and thus, a litigant who chooses himself as a legal representative should be treated no differently." *Id.* (quotation marks omitted).

Here, the plaintiff's unfamiliarity with the basics of Rule 56 is particularly inexcusable, given that she has filed a number of *pro se* suits against previous employers, including at least one suit that progressed to summary judgment. (*See Batey v. Metro. Gov't Dep't of Hosp.*, No.

evidence); *see also Zainalian v. Memphis Bd. of Educ.*, 3 Fed. Appx. 429, 431 (6th Cir. 2001) (affirming the lower court's decision to disregard the *pro se* plaintiff's unsworn affidavit and to grant summary judgment against him; "[a]s [the plaintiff] neither verified his affidavit nor complaint, signed them under oath, nor signed them under penalty of perjury . . . , the facts averred to therein lacked the force and effect of an affidavit for purposes of responding to a motion for summary judgment"); *United States v. Brown*, 7 Fed. Appx. 353, 354 (6th Cir. 2001) (affirming grant of summary judgment against a *pro se* plaintiff because he "failed to present any evidence to defeat the government's motion"; although the plaintiff had made relevant factual allegations, he "did not file an affidavit to this effect nor did he sign any pleading under penalty of perjury"); *Johnson v. Stewart*, No. 08-1521, 2010 U.S. App. LEXIS 27051, at *6-7 (6th Cir. May 5, 2010) ("The liberal treatment of pro se pleadings does not require lenient treatment of substantive law, and the liberal standards that apply at the pleading stage do not apply after a case has progressed to the summary judgment stage." (citations omitted)); *Am. Express Travel Related Servs. Co. v. Tangredi*, No. 3:08-1141, 2010 U.S. Dist. LEXIS 34879, at *23-24 (M.D. Tenn. Apr. 8, 2010) (disregarding a *pro se* defendant's signed filing, which contained factual allegations, because "the document [was] not sworn, nor [was] it attested to under penalty of perjury," meaning that it was not "the equivalent of an affidavit opposing Plaintiff's summary judgment motion"); *cf. El Bey v. Roop*, 530 F.3d 407, 414 (6th Cir. 2008) (finding that a *pro se* plaintiff's verified complaint carried the same weight as an affidavit for summary judgment purposes, because it was signed under penalty of perjury).

---

3:05-cv-0996 (M.D. Tenn.); *Batey v. Vanderbilt Hosp.*, No. 3:08-cv-1185 (M.D. Tenn.).)

Here, all of the allegations and denials made by the plaintiff in response to the defendant's Motion for Summary Judgment are contained in unsworn filings. (*See* Docket Nos. 98 (unsworn brief), 111 (same), 117, Ex. 1 (same), 123 (same), 129 (same).) These filings contain many instances in which the plaintiff states that she "affirms" certain allegations, but none of these statements are sworn to or attested to under penalty of perjury. Consequently, the court must disregard the unsupported factual assertions contained in these documents.[6]

Without admissible evidence supporting the plaintiff's factual assertions, she cannot meet her burden in opposing the defendant's motion. Under the *McDonnell Douglas* burden-shifting framework that applies to the plaintiff's claims, the plaintiff must first show a *prima facie* case of

---

[6] The plaintiff has submitted some documentary evidence, but these documents generally do not contradict the defendant's version of the facts. (Docket No. 98, Ex. 1 (the plaintiff's resume and an EEOC letter recommending dismissal of her Charge); Docket No. 111, Ex. 1 (various documents, including a job description and the plaintiff's evaluations, as well the defendant's interrogatory responses listing various employees' race and dates of employment); Docket No. 117, Ex. 2 (various job-related documents).)

The latter filing does contain several emails that tend to somewhat support the plaintiff's case. Each email was sent by Patricia Courts, an African-American co-worker of the plaintiff. One email, dated September 12, 2007, mentioned that a customer praised Batey (Docket No. 117, Ex. 2 at 21); another, dated April 30, 2008, stated that department director Janet Smith called Batey a "hindrance" in a meeting (*id.* at 39); another, dated May 8, 2008, alleged that Smith "verbally attacked another [unnamed] Black female" (*id.* at 43); another, dated May 20, 2008, stated that Batey had asked Courts how to contact the defendant's ethics department (*id.* at 46); another, dated August 13, 2008, stated that Courts overheard a co-worker discussing recruitment for a manager position; and finally, another, dated September 3, 2008, responded to the plaintiff's firing by generally complaining of a racially hostile working environment (*id.* at 51).

But, even assuming that the emails are not inadmissible hearsay, *see* Fed. R. Evid. 801(d)(2)(D), and that they do not need to be properly authenticated, *see id.* 902(7), they are not enough for the plaintiff to avoid summary judgment. For example, the emails do not indicate which employee replaced the plaintiff after she was fired, nor would they allow a reasonable juror to conclude that the defendant's legitimate explanation for firing her was pretextual.

9

discrimination or retaliation. *E.g.*, *Russell v. Univ. of Toledo*, 537 F.3d 596, 604 (6th Cir. 2008). If she does, and if the defendant proffers a legitimate, nondiscriminatory reason for its actions, the plaintiff must then show that the defendant's reasons were merely a pretext for discrimination or retaliation. *Id.*

Here, the plaintiff has not made a *prima facie* showing that her termination was discriminatory, because she has not provided any evidence that she was replaced by a younger, non-African American, or male employee, or that she was treated differently than similarly situated non-protected employees. *See id.* Nor has the plaintiff made a *prima facie* showing of retaliation, because she has not shown that she engaged in any protected activity before her termination.[7] *See id.* at 609. Furthermore, even if the plaintiff were able to set forth *prima facie* claims, she has failed to sufficiently rebut the defendant's proffered explanation for its actions – that she was fired for her repeated verbal outbursts and rude behavior.[8] *See id.* at 604 (stating that a plaintiff must prove pretext by showing "either (1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate [her] discharge, or (3) that they were insufficient to motivate discharge" (quotation marks omitted) (alteration in original)).

Because this court's *de novo* review finds that the plaintiff has not submitted sufficient evidence in opposition to the defendant's Motion for Summary Judgment, that motion must be

---

[7] Although one email from Patricia Courts states that she and the plaintiff discussed, at some point, how to contact the defendant's ethics department, it does not state that the plaintiff ever actually contacted the ethics department. (Docket No. 117, Ex. 2 at 46.)

[8] The affidavit of Connie Yates, the defendant's Director of Human Resources during the relevant time period, states that Yates decided to terminate the plaintiff's employment based on the plaintiff's repeated "disrespectful, intimidating behavior," which violated Amerigroup's employee conduct policies. (Docket No. 93 ¶ 8.)

granted.

## **CONCLUSION**

Accordingly, the plaintiff's Objections (Docket Nos. 123, 129) are **OVERRULED**. The Magistrate Judge's Report and Recommendation (Docket No. 115) is hereby **ADOPTED**, the defendant's Motion for Summary Judgment (Docket No. 89) is **GRANTED**, and the plaintiff's claims are **DISMISSED** with prejudice. Entry of this Order shall constitute the judgment in this case.

It is so Ordered.

Entered this 22nd day of March 2011.

_____
ALETA A. TRAUGER
United States District Judge